# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| ROXTEC INC., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-17-2105 |
| | § | |
| WALLMAX S.R.L., *et al.*, | § | |
| | § | |
| *Defendants*. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the court are (1) a motion to dismiss[1] (Dkt. 35) and (2) a motion for sanctions (Dkt. 24) filed by defendants WallMax s.r.l., WallMax USA Corp., and Britmar Marine Ltd. (collectively, "Wallmax"). Plaintiff Roxtec Inc. ("Roxtec") responded to both motions. Dkts. 25, 37. Having considered the motions, responses, replies, other relevant documents in the record, and applicable law, the court is of the opinion that (1) the motion to dismiss should be GRANTED IN PART and DENIED IN PART and (2) the motion for sanctions should be DENIED.

## I. BACKGROUND

This is a Lanham Act case arising out of Roxtec's and Wallmax's use of modular sealing systems.[2] Dkt. 33. Roxtec AB—Roxtec's parent company—"deisgns [sic], produces, and distributes

---

[1]Wallmax filed a motion to dismiss on October 9, 2017. Dkt. 11. Roxtec amended its complaint on March 2, 2018, and Wallmax filed a motion to dismiss the amended complaint on March 22, 2018. Dkts. 33, 35. Thus, Wallmax's original motion to dismiss (Dkt. 11) is DENIED AS MOOT. *See Probado Techs. Corp. v. Smartnet, Inc.*, No. C–09–349, 2010 WL 918573, at *1 (S.D. Tex. Mar. 12, 2010).

[2]For the purposes of a motion to dismiss, the court accepts all well-pled facts contained in Roxtec's amended complaint as true. *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).

systems for sealing cables and pipes in order to protect them against external agents such as fire, water, pressure, dust, and rodents, in order to ensure safe installation on land, at sea, and underground." *Id.* at 2. Since at least 1977, Roxtec has sold modular sealing systems in the United States and alleges that it is the market leader in the product. *Id.* at 3.

Roxtec designed its modular sealing systems to be comprised of a series of black concentric circles of uniform width in two alternating and contrasting colors with a black sphere in the center ("Concentric Circle Design").[3] *Id.* Roxtec uses the Concentric Circle Design in its printed advertising materials, on its website, and in other promotional material. *Id.* Roxtec alleges that the design is extremely well-known among consumers of modular sealing systems and has acquired a strong secondary meaning signifying Roxtec. *Id.* at 5–6. Accordingly, the design has increased Roxtec's business. *Id.* at 6.

Roxtec alleges that Wallmax has used the Concentric Circle Design on their own modular sealing systems. *Id.* at 6. Further, Wallmax has advertised that its modular sealing systems are halogen-free. *Id.* at 11. However, Roxtec asserts that laboratory testing on multiple Wallmax modules revealed that they are not halogen-free, at least by Roxtec's definition. *Id.* Accordingly, Roxtec sued Wallmax alleging: (1) false designation of origin under 15 U.S.C. § 1125(a); (2) trade dress infringement under 15 U.S.C. § 1125(a); (3) unfair competition under Texas common law; (4) unjust enrichment under Texas common law; and (5) false advertising under 15 U.S.C. § 1125(a). *Id.* at 12–16.

---

[3]Images of the Concentric Circle Design are found on pages 4 and 5 of Roxtec's first amended complaint. Dkt. 33 at 4–5.

In the instant motions, Wallmax moves to dismiss all of Roxtec's claims. Dkt. 35. Further, Wallmax moves for sanctions against Roxtec under Rule 11 of the Federal Rules of Civil Procedure. Dkt. 24. The court will consider each motion in turn.

## II. MOTION TO DISMISS

### A. Legal Standard

Rule 8(a)(2) requires that the pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A party against whom claims are asserted may move to dismiss those claims when the nonmovant has failed "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (citations omitted). While the allegations need not be overly detailed, a plaintiff's pleading must still provide the grounds of his entitlement to relief, which "requires more than labels and conclusions," and "a formulaic recitation of the elements of a cause of action will not do." *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009). "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

3

Evaluating a motion to dismiss is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "Ultimately, the question for a court to decide is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff." *NuVasive, Inc. v. Renaissance Surgical Ctr.*, 853 F. Supp. 2d 654, 658 (S.D. Tex. 2012).

**B.      Analysis**

   *1.      Judicial Notice*

Wallmax requests the court to take judicial notice of European Patent No. EP0429916, which expired in 2010 ("Expired Patent"). Dkt. 36 at 18. Wallmax argues that the Expired Patent reveals the functional nature of the Concentric Circle Design, which disposes of many of Roxtec's claims. *Id.* at 21–26.

Federal Rule of Evidence 201 provides: "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). Further, "[t]he court . . . must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2). "The court may take judicial notice at any stage of the proceeding." Fed. R. Evid. 201(d).

Wallmax argues that "it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." Dkt. 36 at 18 (quoting *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007)). However, "judicial notice of matters of public record is limited to materials like general historical observations, court orders, administrative publications, and dictionary definitions." *ContourMed Inc. v. Am. Breast Care L.P.*, No. H-15-2769, 2016 WL 1059531, at *2 (S.D. Tex. Mar. 17, 2016) (Miller, J.).

In *ContourMed*, this court declined to judicially notice the prosecution history and prior art references of a United States patent. *Id.* In reaching this conclusion, the court held that judicial notice of prosecution history and prior art, "while publicly available, is not appropriate because of the facts asserted in those documents could be disputed by the plaintiff, if given the opportunity." *Id.*

As evidenced by Roxtec's response, it disputes the facts surrounding the Expired Patent and the effect that the patent has on this case. Dkt. 38 at 13 ("Defendants cite no authority discussing the effect of a foreign patent on functionality analysis . . . ."). Following the example of *ContourMed*, the court declines to take judicial notice of the Expired Patent. Thus, Wallmax's request for judicial notice is DENIED.[4]

2.  *Trade Dress Claim*

Having declined to consider evidence outside the pleadings, the court must decide if Roxtec sufficiently alleges a trade dress claim. "'Trade dress' refers to the design or packaging of a product which serves to identify the product's source." *Eppendorf-Netheler-Hinz GMBH v. Ritter GMBH*, 289 F.3d 351, 354 (5th Cir. 2002). A plaintiff must prove: (1) that "the trade dress is protectable, meaning it is inherently distinctive or has acquired secondary meaning"; (2) that "the defendant's

---

[4] Even if the court did take judicial notice of the Expired Patent, the effect of the patent is unclear. The Supreme Court has held that "[a] utility patent is *strong evidence* that the features therein claimed are functional." *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 29, 121 S. Ct. 1255 (2001) (emphasis added). Because a patent is not dispositive, "one who seeks to establish trade dress protection must carry the heavy burden of showing that the feature is not functional, for instance by showing that it is merely an ornamental, incidental, or arbitrary aspect of the device." *Id.* at 30. Thus, if the court judicially noticed the Expired Patent, it would also need to give Roxtec an opportunity to provide contrary evidence. As the Fifth Circuit has cautioned, the court will not place a summary judgment burden on Roxtec at the motion to dismiss stage of the litigation. *See Alpha Kappa Alpha Sorority Inc. v. Converse Inc.*, 175 F. App'x 672, 679 (5th Cir. 2006) (holding that the district court should not have relied on a case applying a preliminary injunction standard when ruling on a 12(b)(6) motion).

trade dress creates a likelihood of confusion"; and (3) if the trade dress is not registered, that the trade dress is non-functional. *Grand Time Corp. v. Watch Factory Corp.*, No. 3:08–CV–1770–K, 2011 WL 2412960, at *7 (N.D. Tex. June 10, 2011) (citations omitted).

Wallmax argues that Roxtec fails to allege a trade dress claim because: (1) "Roxtec does not allege its claimed trade dress with sufficient specificity and clarity"; (2) "Roxtec has not adequately pled that the alleged trade dress is non-functional"; and (3) "it has also failed to allege facts that any aspect of the Concentric Circle Design serves to identify the source of the product rather than to render the product more useful or appealing."[5] Dkt. 36 at 19, 21, 25.

The court disagrees with Wallmax's first and third arguments. In paragraph 13 of the complaint, Roxtec describes the claimed trade dress. It states:

> Each of Roxtec's modular sealing systems bears a design comprised of a series of black concentric circles of uniform width in two alternating and contrasting colors with a black sphere in the center . . . . The images below are representative examples of the aforementioned uses of Roxtec's Concentric Circle Design.

Dkt. 33 at 3–5 (the text is followed by images of Roxtec's design).

Roxtec's description, combined with the images that follow, sufficiently allege its claimed trade dress. *See, e.g.*, *Deckers Outdoor Corp. v. Fortune Dynamic, Inc.*, CV 15-769 PSG (SSx), 2015 WL 12731929, at *4 (C.D. Cal. May 8, 2015) ("[L]isting the elements of a trade dress and providing an image of a product bearing the dress sufficiently identifies the trade dress over which plaintiff claims exclusive rights . . . ."). Wallmax's reliance on *New York Pizzeria* is unhelpful. Dkt. 36 at 21 (citing *New York Pizzeria, Inc. v. Syal*, 56 F. Supp. 3d 875, 882–83 (S.D. Tex. 2014)). In *New York Pizzeria*, Judge Costa held that "notice is lacking here because Defendants have no idea

---

[5]Wallmax also asserts several arguments based on the Expired Patent. Because the court will not consider the Expired Patent at the 12(b)(6) stage, it need not consider those arguments.

what it is about the plating of ziti and chicken or eggplant parmesan that is distinctive." 56 F. Supp. 3d at 883. The same cannot be said in the instant case. Wallmax knows that Roxtec claims the Concentric Circle Design is distinctive. Dkt. 33 at 3. And if Wallmax argues that Roxtec's description still leaves them without notice of Roxtec's claim, the attached images clear up any ambiguity. *Id.* at 4–5.

Roxtec also sufficiently alleges that the Concentric Circle Design identifies the source of the products. Roxtec alleges:

> 14. Roxtec has provided modular sealing systems in the United States bearing the Concentric Circle Design since at least as early as 1997. Roxtec has dedicated significant resources to develop its brand, including the Concentric Circle Design associated with Roxtec's modular sealing systems.
>
> 15. Since long pirior [sic] to the acts of WallMax described below, the Concentric Circle Design has been extremely well-known among consumers of modular sealing systems in the United States.
>
> 16. Since long prior to the acts of WallMax described below, and as a result of Roxtec's extensive use, advertising, and promotion of the Concentric Circle Design, the Concentric Circle Design has become famous and has acquired a strong secondary meaning signifying Roxtec.
>
> 17. As a result of Roxtec's extensive use and promotion of the Concentric Circle Design, Roxtec now owns valuable goodwill which is symbolized by that design, and the use of the Concentric Circle Design substantially increases the value of Roxtec's buseinss [sic] and the salability of associated modular sealing systems offered under that design.

*Id.* at 5–6.

At the motion to dismiss stage, those allegations are sufficient. *See Alpha Kappa Alpha*, 175 F. App'x at 677–79 (finding the pleadings sufficient and noting that "when the plaintiffs are able to develop their case, they intend to provide evidence of inherent distinctiveness or of secondary meaning, which will be necessary to establish that their marks or trade dress are protectable"). As

the case progresses, Roxtec will have to provide evidence of inherent distinctiveness or secondary meaning. *Id.* at 279. But its pleadings on that element are sufficient to survive 12(b)(6).

However, the court agrees with Wallmax that Roxtec fails to adequately allege that its trade dress is non-functional. "[A] product feature is functional, and cannot serve as a trademark, 'if it is essential to the use or purpose of the article or if it affects the cost or quality of an article.'" *Eppendorf*, 289 F.3d at 355 (quoting *TrafFix*, 532 U.S. at 32). "A secondary test also recognized in *Traf[F]ix*, called the 'competitive necessity' test, states that 'a functional feature is one the exclusive use of which would put competitors at a significant non-reputation-related disadvantage.'" *Bayco Prods., Inc. v. Lynch*, No. 3:10–CV–1820–D, 2011 WL 1602571, at *8 (N.D. Tex. Apr. 28, 2011) (quoting *TrafFix*, 532 U.S. at 32).

Courts have applied different standards in determining whether a plaintiff successfully pleads that a trade is non-functional. Some courts have held that plaintiffs must allege *how* a trade dress is non-functional. *Deckers Outdoor*, 2015 WL 12731929, at *4 (listing cases). Other courts have considered whether it is "at least plausible" that the alleged trade dress, when considered as a whole, has a non-functional purpose even if some of its features are functional. *Primesource Bldg. Prods., Inc. v. Hillman Grp., Inc.*, No. 3:14-CV-2521-B, 2015 WL 11120882, at *4 (N.D. Tex. Mar. 31, 2015).

Regardless of which standard the court applies, Roxtec's complaint falls short. The only mention of functionality in the complaint states: "The Concentric Circle Design is not functional." Dkt. 33 at 13. That conclusory statement does not suffice. *See Blackburn*, 42 F.3d at 931; *see also Deckers Outdoor*, 2015 WL 12731929, at *4. Roxtec urges the court to consider its "allegations describing the elements of the Concentric Circle Design and draw all reasonable inferences in Roxtec's favor regarding the non-functional nature of that design." Dkt. 38 at 16. But Roxtec's

8

allegations describing the elements do not speak to the functionality of the Concentric Circle Design. *See* Dkt. 33 at 3. Roxtec does not provide any basis for the court to draw an inference in its favor. Based on Roxtec's allegations, it is possible that the design is non-functional. However, *Iqbal* requires that a complaint provide plausibility, not "mere possibility." 556 U.S. at 679. Accordingly, Roxtec fails to adequately plead its trade dress claim, and Wallmax's motion to dismiss that claim is GRANTED. However, the court GRANTS Roxtec leave to amend its complaint to cure its pleading deficiency. *See Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1986) ("Dismissing an action after giving the plaintiff only one opportunity to state his case is ordinarily unjustified.").

   *3.   State Law Claims*

Wallmax argues that Roxtec's state law claims should be dismissed because the Concentric Circle Design is functional and Roxtec's claims should fall under patent law. Dkt. 36 at 26. But the court cannot yet determine if Roxtec's design is functional as a matter of law. Thus, Wallmax's sole ground for dismissal fails, and the motion to dismiss is DENIED.

   *4.   False Advertising*

To state a prima facie case of false advertising, a plaintiff must establish: (1) a false or misleading statement of fact about a product; (2) such a statement either deceived, or had the capacity to deceive a substantial segment of potential customers; (3) the deception is material, in that it is likely to influence the consumer's purchasing decision; (4) the product is in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the statement at issue. *Derrick Petrol. Servs. v. PLS, Inc.*, No. H–14–1520, 2017 WL 3456920, at *5 (S.D. Tex. Aug. 11, 2017) (Rosenthal, J.) (quoting *Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 495 (5th Cir. 2000)). Wallmax argues that Roxtec fails to plead facts to support any of the elements. Dkt. 36 at 26–28.

Roxtec alleges that Wallmax advertised that its modules are halogen-free despite that testing revealed that the modules are halogenated. Dkt. 33 at 11. Wallmax primarily argues that Roxtec did not plead a false or misleading statement because it did not define what constitutes halogen-free. Dkt. 36 at 27. Roxtec alleges that the testing on Wallmax's modules revealed halogen levels above the generally accepted definitions of halogen-free. Dkt. 33 at 10–11. Roxtec specifically endorses a particular definition and states that other accepted definitions only vary slightly. *Id.* Wallmax may contest the veracity of Roxtec's definition, but accepting the complaint as true, Roxtec alleges a false or misleading statement.

Roxtec alleges that "many consumers would decline to purchase modular sealing systems from WallMax if they knew that WallMax's modular sealing systems were not halogen-free." *Id.* at 11. It also alleges that "WallMax can offer its modular sealing sytem [sic] goods at a price point below Roxtec's because WallMax uses cheaper, halogenated rubber." *Id.* These factual allegations satisfy Roxtec's burden to plead the second and third elements of its claim—that the statement had the capacity to deceive a substantial segment of potential customers and that the statement was likely to influence a customer's purchasing decision.

Roxtec alleges that Wallmax offers its products for sale in the United States, and thus causes its products to enter interstate commerce. *Id.* at 9; *see also Dille Family Trust v. Nowlan Family Trust*, 207 F. Supp. 3d 535, 545 (E.D. Pa. 2016) ("In this case, Plaintiff has alleged that Defendant attempted to sell the script and series bible to Sy-Fy—a national television network. This activity falls well within Congress's broad power to regulate interstate commerce."). Finally, Roxtec alleges that "WallMax has made and will make substantial profits and gains to which it is not in law or equity entitled." Dkt. 33 at 16. Thus, it "is being damaged by Wallmax's conduct." *Id.* Viewing the complaint in the light most favorable to Roxtec, it plausibly alleges that it has been injured or

will likely be injured as a result of the deception. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 133, 134 S. Ct. 1377 (2014) ("[A] plaintiff . . . must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that . . . occurs when deception of consumers causes them to withhold trade from the plaintiff."). According to Roxtec's allegations, Wallmax has made profits it is not entitled to by its deception, which has in turn damaged Roxtec. Dkt. 33 at 16. Thus, Roxtec plausibly states a claim for false advertising. Wallmax's motion to dismiss that claim is DENIED.

### III. MOTION FOR SANCTIONS

Wallmax argues that the court should impose sanctions against Roxtec because Roxtec had no factual or legal basis to assert its claims against Wallmax and because Roxtec brought the action for an improper reason. Dkt. 24-1. Rule 11 requires an attorney filing litigation documents to certify that the documents:

> (1) [are] not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law . . . .

Fed. R. Civ. P. 11(b).

Regarding subsection (2), the court considers whether a filing "is legally indefensible." *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 528 (5th Cir. 2016). "[A] trial court should not impose Rule 11 sanctions for advocacy of a plausible legal theory . . . ." *Id.* (citation omitted). At this stage of the proceedings, Roxtec has alleged plausible claims (other than its conclusory non-functional allegation). *See supra* Section II. Thus, sanctions are not warranted under Rule 11(b)(2).

11

Regarding subsection (1), the court must determine whether "it is objectively ascertainable that an attorney submitted a paper to the court for an improper purpose." *F.D.I.C. v. Maxxam, Inc.*, 523 F.3d 566, 580 (5th Cir. 2008) (footnote omitted). Wallmax argues that Roxtec's failure to disclose the Expired Patent establishes that it filed this suit for an improper purpose. Dkt. 24-1 at 16–17. Without determining the effect of the Expired Patent on Roxtec's claims, the court cannot find that it is "objectively ascertainable" that Roxtec filed the suit for an improper purpose. Thus, Wallmax's motion for sanctions is DENIED.

## IV. CONCLUSION

Wallmax's second motion to dismiss (Dkt. 35) is GRANTED IN PART and DENIED IN PART. It is GRANTED with respect to Roxtec's trade dress claim. That claim is DISMISSED WITHOUT PREJUDICE. The court GRANTS Roxtec leave to amend its complaint to cure the pleading deficiencies set forth in this order. If Roxtec chooses to amend its complaint, it must file another amended complaint within twenty-one (21) days from the date of this order. Wallmax's original motion to dismiss (Dkt. 11) is DENIED AS MOOT. Wallmax's motion for sanctions (Dkt. 24) is DENIED.

Signed at Houston, Texas on August 15, 2018.

_____
Gray H. Miller
United States District Judge